**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KATHY BELANGER, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No.. 1:20-cv-3087 |
| vs. | ) ) | |
| IBERIA LINEAS AEREAS DE ESPANA S.A. OPERADORA, a foreign corporation d/b/a "Iberia", | ) ) ) ) | Honorable _____ |
| Defendant. | ) ) ) ) | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.     Plaintiff Kathy Belanger ("Plaintiff"), by and through her counsel, files this Class Action Complaint against IBERIA LINEAS AEREAS DE ESPANA S.A. OPERADORA, (hereinafter "***Defendant***" or "***Iberia***"), on behalf of herself and on behalf of a class of similarly situated individuals, and alleges, upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

2.     The Covid-19 pandemic confronts Americans with one of the greatest health and economic crises in the history of our nation, threatening the lives and livelihoods of millions. Shared sacrifice and mutual responsibility have never been more important to navigate these uncertain times.  Tens of millions have been forced to file for unemployment system in a matter of weeks, and pocketbooks are being stretched like never before.  For individuals and businesses alike, the need for cash and liquidity has never been greater.

1

3.     Unfortunately, Iberia, an international airline that carries tens of millions of passengers on an annual basis, has refused to honor its contractual obligations during this crisis.

4.     With mounting flight cancellations due to the Covid-19 pandemic, Defendant has refused to provide contractually guaranteed monetary refunds for cancelled flights to passengers. Defendant has reprehensibly extracted maximum capital from customers, while padding their own balance sheets. Defendant's innocent customers are now left holding the bag.

5.     In lieu of contractually guaranteed refunds, Defendant has, at best, required Plaintiff and the Class to accept devalued, expiring flight coupons for use on its own airline that carry substantially less or no value to Plaintiff and the Class during this uncertain time.

6.     Defendant's uniform conduct is equally applicable to Plaintiff and the Class. Plaintiff brings this action against Defendant for breach of contract and to seeks an order from this Court requiring Defendant to, among other things, (1) discontinue the illegal practice of issuing coupons in lieu of refunds to any Class Member who has not requested coupons, and (2) pay damages and/or restitution to Plaintiff and the Class.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendant, a citizen of a foreign state.

8.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in Illinois, including entering into contracts with Illinois residents, maintaining a continuous physical business presence in Illinois, and providing flights and services in Illinois.  Further, a substantial portion of the acts complained of herein took place in Illinois.

2

9. Venue is proper in this District because Defendant systematically and continuously conducts business in this District and many of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

10. Plaintiff Kathy Belanger is an individual and a citizen of Michigan.

11. Defendant IBERIA is a foreign corporation organized under the laws of Spain, with its principal place of business in Madrid, Spain.

## FACTUAL ALLEGATIONS

12. IBERIA is an international air carrier that ordinarily offers thousands of daily flights, carrying tens of millions of passengers per year, servicing nearly 120 destinations in 45 countries on multiple continents, including Europe, Africa, the Middle East, and the United States.

13. Defendant's flight route network provides regular routes to numerous airports and destinations in the United States, including Anchorage, Boston, Chicago, Los Angeles, Miami, New York, and Washington D.C.

14. Defendant offers and operates multiple flights arriving at and departing from and the Chicago O'Hare International Airport, located in this District.

15. Defendant offers and sells flight tickets directly to customers, who make monetary payments to Defendant in exchange for a selected flight itinerary that conforms to customer's specifically selected travel schedule.

16. Defendant collects passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

3

17.    As part of each ticket purchase, Defendant makes a promise and warranty to customers that they are entitled to fixed monetary refunds in accordance with the European Parliament and Council Regulation (EC) No. 261/2004 of 11th February.[1]

18.    Fixed monetary refunds are guaranteed under Article 7 of EC No. 261 are generally based on mileage of the scheduled flight.[2]

19.    Defendant, by conducting flights to and from the United States, submits itself to applicable United States law, rules, and regulations with respect to the rules and regulations governing its air carriage services.

20.    U.S. law, 49 U.S.C.S. 41712, prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section.  Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, 23129.

21.    Defendant's obligation to under U.S. law to provide U.S. passengers monetary refunds for cancelled flights exists, even where extraordinary circumstances beyond Defendant's control may have caused the flight cancellation.

22.    Prior to the Covid-19 crisis, Defendant honored its promises and warranties to offer U.S. passengers monetary refunds for cancelled flights, as required by applicable DOT rules and regulations.

---

[1] https://www.iberia.com/us/bills/conditions/ (last visited May 22, 2020).
[2] https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:32004R0261 (last visited May 22, 2020).

### *Defendant's Response to the Covid-19 Pandemic*

23.     On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

24.     As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

25.     On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

26.     Throughout March, daily cases of Covid-19 were increasing dramatically as well, in addition to many of the 36 countries where they offer air travel.

27.     By March, it was abundantly clear that the United States was going to be hit hard by the rapidly spreading Covid-19 pandemic and that dramatic changes to ordinary consumer behavior, including widespread discontinuation of non-essential travel and congregating in enclosed spaces (like airports and airplanes), were imminent.

28.     Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

29.     The U.S. Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

30.     It was entirely known and foreseeable to Defendant that many of its previously scheduled flights, arriving in and departing from the United States, would need to be cancelled in

order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

31.     Yet, Defendant quietly ceased honoring contractual agreements with Plaintiff and the putative class by discontinuing monetary refunds for cancelled and substantially rescheduled flights. Instead, at best, Defendant required passengers to accept only devalued redeemable credits for future use on their own airline.

32.     Defendant erected bureaucratic barriers which prevented passengers from requesting and obtaining refunds or flight credits, ensuring a windfall for Defendant.

33.     Defendant also set untenable expiration dates on the future credits, permitting the company to receive a windfall because many passengers will not redeem the credits.

34.     The practice of offering expiring credits in lieu of refunds is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when international air travel will once again be safe.

35.     The future flight credits provide Defendant additional opportunities to charge service, processing, baggage, and other fees that will ensure Defendant additional future profits—while retaining Plaintiff cash in the interim—substantially diminishing any value for Plaintiff and the putative class.

36.     Recognizing the abuse, and potential for abuse, by Defendant and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to remind Defendant and other air carriers operating in the United States that they remain under an obligation to provide passengers with their rights to a refund for any cancelled U.S. flight resulting from the Covid-19 pandemic.

37.     On April 3, 2020, the DOT issued a notice to remind carriers that, "passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed."[3] The notice stated that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, *the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged*." (Emphasis added).

38.     The DOT notice continued that:

[t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

…

Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions

---

[3] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited May 8, 2020).

to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

39.     In addition to violation of its own contract of carriage, Defendant has failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712 and offer full refunds to its passengers.

40.     Defendant has deprived Plaintiff and the Class of the monetary refunds to which they are entitled by (1) failing to provide monetary refunds; (2) oftentimes issuing coupons or vouchers in place of monetary refunds; (3) rendering it functionally impossible to specifically request refunds or vouchers/coupons by inaccessibility of customer service, with wait times of several hours frequently reported; and/or (4) obscuring passengers' right to a monetary refund.

41.     To the extent that it can be argued that Defendant's terms purport to require any affirmative action on the part of any passenger to choose a monetary refund over an automatic coupon or voucher, which by their terms they do not, such requirement is void as contrary to law and public policy.

### *Plaintiff's Use of Defendant's Services*

42.     Plaintiff Kathy Belanger purchased a round trip ticket directly from Defendant that was scheduled to depart from the Chicago O'Hare International Airport to Madrid Adolfo Suarez-Barajas (MAD) airport on April 7.

43.     The return date was from MAD to Chicago O'Hare on April 17, 2020.

44.     Plaintiff paid $591.48 for the tickets using a credit/debit card.

45.     Defendant cancelled Plaintiff's flight.

46.     Plaintiff learned about the cancellation in March through an email from Defendant on or around March 22.

47.     On multiple occasions, Plaintiff informed Defendant that she wanted a refund, instead of a credit.

48.     Defendant instructed Plaintiff to fill out a claim form in order to formally request a refund.

49.     Plaintiff followed the instructions and filled out the form.

50.     After expending substantial time and effort, Defendant tried to force Plaintiff into a credit in lieu of a refund.

51.     Plaintiff once again informed Defendant that she wanted a refund, not a credit.

52.     Defendant required Plaintiff to accept a credit in lieu of a refund.

53.     No leg or portion of Plaintiff's scheduled flight through Defendant's airline occurred.

54.     Plaintiff did not engage in any international air travel in relation to the tickets she purchased from Defendant.

55.     Defendant did not and cannot provide Plaintiff alternative transportation of any kind in relation to the ticket she purchased.

56.     Plaintiff's flight was not and will not be rescheduled by Defendant.

57.     Plaintiff, as she told Defendant multiple times, does not want an expiring coupon/voucher for use on Defendant's airline in lieu of a monetary refund and has no use for one.

58.     The credit she received from Defendant expires and has no value to Plaintiff, as she is indefinitely unwilling to engage in international travel due to the Covid-19 pandemic.

59.     Plaintiff has suffered damages as a result of Defendant conduct.

9

## CLASS ALLEGATIONS

60.     Plaintiff brings this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23.  The proposed class is defined as:

> All persons residing in the United States or its territories who purchased tickets for travel on an Iberia flight to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Defendant, and who were not provided a monetary refund, including charges and fees. Excluded from the Class are (a) any person who has specifically requested a coupon or voucher in lieu of a monetary refund; (b) any person who requested and received alternative air transportation in lieu of a monetary refund; (c) all persons who are employees, directors, officers, and agents of either Defendant; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

61.     Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

62.     Numerosity.  Fed. R. Civ. P. 23(a)(1).  Defendant carries tens of millions of passengers per year on tens of thousands of normally scheduled of flights. A significant percentage of those flights beginning in March 2020 have been cancelled. At a minimum, there are more than ten thousand Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendant's records.

63.     Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  Common issues include:

> A.     Whether Defendant formed contracts with its passengers in selling them tickets for air travel;
>
> B.     Whether Defendant's conduct breaches the terms of its contracts with its passengers;
>
> C.     Whether Defendant is required to provide a monetary refund, rather than an expiring voucher, to passengers for cancelled flights;

        D.     The nature of the relief, including equitable relief, to which Plaintiff and the class are entitled.

64. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class she seeks to represent. Plaintiff and all Class members were exposed to substantially similar contracts, breaches, and sustained injuries arising out of and caused by Defendant's unlawful conduct, which occurred pursuant to a uniform policy.

65. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff's counsel is competent and experienced in litigating class actions.

66. Superiority. Fed. R. Civ. P. 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

67. Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

68.     Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

### FIRST CAUSE OF ACTION
### Breach of Contract

69.     Plaintiff incorporates all factual allegations in the Complaint by reference as if fully set forth herein.

70.     A contract was formed between Plaintiff and Class members on the one hand and Defendant on the other with respect to the purchase of airfare.

71.     The contract was offered by Defendant and formed at the time Plaintiff and the Class accepted it by purchasing their tickets.

72.     The contract that governs the transactions at issue in this case requires monetary refunds for cancelled flights where the passenger does not elect to take substitute transportation.

73.     Plaintiff and the Class performed their obligations under the contract.

74.     Defendant breached the contract when it denied monetary refunds to passengers on canceled or substantially delayed/interrupted flights.

75.     Defendant failed to provide reasonable substitute transportation.

76.     Defendant's breaches were willful and not the result of mistake or inadvertence.

77.     As a result of Defendant's breach, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the class of similarly situated individuals, requests the Court to:

(a)     Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representative of the class and designate counsel

12

of record as class counsel;

(b)     Order Defendant to provide actual damages and equitable monetary relief (including restitution) to Plaintiff and class members and/or order Defendant to disgorge profits realized as a result of its unlawful conduct;

(c)     Order Defendant to pay punitive damages, as allowable by law, to Plaintiff and class members;

(d)     Declare Defendant's conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(e)     For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(f)     For costs of the proceedings herein;

(g)     For reasonable attorneys' fees as allowed by law; and

(h)     Award such other relief as the Court deems appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff, on behalf of herself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  May 24, 2020                                    Respectfully submitted,


                                                        **LIDDLE & DUBIN, P.C.**

                                                        s/ Nicholas A. Coulson

                                                        David R. Dubin (Application Forthcoming)
                                                        ddubin@ldclassaction.com
                                                        Nicholas A. Coulson
                                                        ncoulson@ldclassaction.com
                                                        975 E. Jefferson Avenue
                                                        Detroit, Michigan 48207

                                                        Tel: 313-392-0015
                                                        Fax: 313-392-0025

                                                        *Attorneys for Plaintiff and the*
                                                        *Putative Class*